IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARTHUR I NAVARRO and NANCY T. NAVARRO, individually and on behalf of their minor children, | § § § § | |
| Plaintiffs, | § § | No. 3:16-cv-1147-S |
| V. | § § | |
| GOLDEN STATE CLAIMS ADJUSTERS, | § § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiffs/Counter Defendants Arthur I. Navarro and Nancy T. Navorro have filed a Motion for Partial Summary Judgment Against Defendant Preferred Contractors Insurance Company, RRG (the Navarros' "MSJ"), *see* Dkt. No. 41, and Defendant/Intervenor Plaintiff Preferred Contractors Insurance Company Risk Retention Group, LLC ("PCIC") has filed an Amended Motion for Summary and Default Judgment (PCIC's "MSJ" and "Motion for Default"), *see* Dkt. No. 59.

United States District Judge Karen G. Scholer has referred the Navarros' MSJ and PCIC's MSJ and Motion for Default to the undersigned United States magistrate judge for recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 73.

PCIC has filed a response to the Navarros' MSJ, *see* Dkt. No. 49, which incorporates by reference PCIC's previous, and now-moot, motion for summary judgment, *see* Dkt. No. 46. The Navarros have filed a reply. *See* Dkt. No. 58.

1

The Navarros have filed a response to PCIC's MSJ, *see* Dkt. No. 65, and PCIC has filed a reply, *see* Dkt. No. 68.

Defendant Phillip Jenkins d/b/a Dallas Restoration has not responded to PCIC's Motion for Default Judgment, and the time to do so has passed. *See* N.D. TEX. L. CIV. R. 7.1.

For the reasons and to the extent explained below, the Court should deny the Navarros' MSJ [Dkt. No. 41], should grant PCIC's MSJ [Dkt. No. 59], and should deny PCIC's Motion for Default.

## Background

This case arises out of an incident on July 1, 2014 in which Plaintiff Arthur I. Navarro fell through his home's attic floor onto the garage floor below.

The Navarros have filed a personal injury lawsuit against Phillip Jenkins doing business as Defendant Dallas Restoration ("Jenkins") in state court (the "Underlying Suit"), alleging that Mr. Navarro's fall and his resulting injuries were the result of Jenkins's negligent construction work in remodeling the attic of the Navarros' home.

The Navarros originally filed this action against multiple defendants but, after several amendments, brought claims against only Golden State Claims Adjusters – the third-party administrator of Jenkins's commercial liability insurer, PCIC – seeking, in part, a declaration that Jenkins's PCIC policy covers the Navarros' claims in the Underlying Suit. *See* Dkt. No. 14.

PCIC then intervened, asserting claims for declaratory relief against the Navarros and Jenkins and seeking a declaration that PCIC has no duty to defend or

2

indemnify Jenkins in the Underlying Suit.

The Navarros later amended their complaint again and now bring only their declaratory judgment claim against only PCIC. *See* Dkt. No. 57.

PCIC moves for a default judgment against Jenkins, arguing that the Court should enter judgment for PCIC against Jenkins because Jenkins has failed to appear in this case and because, "regardless of Jenkins's failure to appear, the Court already has all of the evidence necessary to make its determination regarding coverage as a matter of law." Dkt. No 60 at 16 of 17.

And both PCIC and the Navarros move for summary judgment on their claims regarding PCIC's duty to defend Jenkins in the Underlying Suit.

PCIC also moves for summary judgment on its claim that it has no duty to indemnify Jenkins in the Underlying Suit.

The Navarros assert that they are entitled to a declaration that "the policy in question covers the allegations of Mr. Navarro's claim as set forth in his petition, that the 'fall from heights' exclusion does not exclude coverage[,] and that PCIC owes Phillip Jenkins and Dallas Restoration a duty to defend the state court law suit." Dkt. No. 42 at 3 of 10. The Navarros explain that, under the PCIC policy, PCIC is obligated to pay for "bodily injury" caused by an "occurrence" that takes place within the "policy period," as those terms are defined in the policy. *See* Dkt. No. 42 at 6. And the Navarros argue that, based on the Original Petition in the Underlying Suit, Mr. Navarro clearly suffered a bodily injury from an occurrence within the policy period.

PCIC does not dispute that the Navarros' allegations in the Underlying Suit

3

satisfy the policy's definitions of "bodily injury," "occurrence," and "policy period." But PCIC maintains that the Navarros' allegations fall within the policy's "fall from heights" exclusion to coverage and that PCIC therefore has no duty to defend Jenkins in the Underlying Suit. And PCIC argues that, because the "fall from heights" exclusion applies, PCIC also has no duty to indemnify Jenkins in the Underlying Suit.

The parties agree that whether they are entitled to summary judgment on their duty to defend claims turns on (1) the meaning of the "fall from heights" exclusion in Jenkins's PCIC policy – PCIC's basis for denying coverage for the Navarros' claims against Jenkins – and (2) whether the allegations contained in the Navarros' Original Petition in the Underlying Suit fall within that exclusion. *See* Dkt. No. 42 at 5; Dkt. No. 60 at 9 of 17. *See generally Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009) ("Under the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy.").

Both parties accordingly have submitted the PCIC policy and the Navarros' Original Petition in the Underlying Suit as summary judgment evidence. *See* Dkt. Nos. 43 & 61. This evidence reveals the following undisputed facts.

PCIC issued an insurance policy to Phillip Jenkins doing business as Dallas Restoration. The policy contains a "fall from heights" exclusion, which explains that the policy's insurance does not extend to

> "[b]odily injury" sustained by any person at the location of the incident,
> whether working or not, arising out of, resulting from, caused by,
> contributed to by, or in any way related to, in whole or in part, from a fall

4

from heights. For purposes of this exclusion, a fall from heights shall include, but not be limited to, a fall from scaffolding, hoists, stays, ladders, slings, hangers, blocks, or any temporary or moveable platform where there is a height differential to the ground.

Dkt. No. 43 at 22; Dkt. No. 61 at 29.

In the Underlying Suit, the Navarros allege:

4.      The remodel project at Mr. Navarro's home began o[n] o[r] about June 24, 2014. On July 1, 2014, Mr. Navarro attempted to inspect the portion of the project involving the installation of new floor trusses as specified in the Architectural Plans. In doing so, Mr. Navarro stepped on the existing attic supports as he had done numerous times previously. On this occasion, however, Mr. Navarro fell thru the attic floor and landed on the solid concrete floor of the garage space below, a distance of approximately 18 feet.

5.      Mr. Navarro hit the concrete floor of the garage, became unconscious and was unable to move or call for help. Plaintiff Nancy T. Navarro and her children found Mr. Navarro lying on the garage floor and called emergency 911 services. The responding emergency personnel transported Mr. Navarro to Parkland Hospital in Dallas TX.

6.      Mr. Navarro's suffered severe life threatening injuries resulting from the fall. These injuries included a severe laceration to the back of his head, a broken collarbone and numerous other fractures of the vertebra, back and ribs.

Dkt. No. 43 at 70-71; Dkt. No. 61 at 5-6.

## Legal Standards

I.    <u>Motion for Default Judgment</u>

A party is entitled to entry of a default by the clerk of the court if the opposing party fails to plead or otherwise defend as required by law. *See* FED. R. CIV. P. 55(a). "This first step, entry of default, is a ministerial matter performed by the clerk and is a prerequisite to a later default judgment." *Am. S. Ins. Co. v. Buckley*, No. 1:09-CV-723,

2010 WL 5654105, at *3 (E.D. Tex. Dec. 28, 2010), *rec. adopted*, 2011 WL 288604 (E.D.

Tex. Jan. 27, 2011).

Rule 55 (b)(2) of the Federal Rules of Civil Procedure governs applications to the Court for default judgment. *See* FED. R. CIV. P. 55(b)(2). A default judgment is available as long as the plaintiff establishes: (1) defendant has been served with the summons and complaint and default was entered for its failure to appear; (2) defendant is neither a minor nor an incompetent person; (3) defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) if defendant has appeared in the action, that defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See, e.g.*, 50 App. U.S.C. § 521; FED. R. CIV. P. 55; *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006).

In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *Id.* The clerk will enter default when default is established by an affidavit or otherwise. *Id.* After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on such default. *Id.*

The [United States Court of Appeals for the] Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). This policy, however, is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan,* 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

When making a determination as to whether or not to enter a default

> judgment, district courts are to consider the following factors: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party. *See id.*

*Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013).

II.    Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

7

case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if

8

that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in

any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

"When parties file cross-motions for summary judgment, [the Court] review[s] each party's motion independently, viewing the evidence and inferences in the light

10

most favorable to the nonmoving party." *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013) (footnote and internal quotation marks omitted).

## Analysis

PCIC moves for default judgment against Jenkins. And PCIC and the Navarros move for summary judgment on their cross-claims as to whether PCIC owes Jenkins the duty to defend. PCIC also moves for summary judgment against the Navarros on whether it owes Jenkins the duty to indemnify.

For the reasons explained below, the Court should deny PCIC's Motion for Default, should deny the Navarros' MSJ, and should grant PCIC's MSJ.

I.   <u>The Court should deny PCIC's Motion for Default Judgment.</u>

PCIC argues that it is entitled to default judgment against Jenkins because "Jenkins was properly served with summons and PCIC's Complaint for Declaratory Judgment and has nevertheless failed to appear." Dkt. No. 60 at 16 of 17.

The Court should deny PCIC's Motion for Default Judgment against Jenkins because PCIC has not shown that service was proper.

"Until [a defendant] is properly served," the plaintiff "cannot obtain a default judgment." *Thompson v. Johnson*, 348 F. App'x. 919, 923 (5th Cir. 2009) (per curiam) (citing *Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999); *see also Williams v. Waste Mgmt., Inc.*, No. 3:16-cv-2943-L-BN, 2017 WL 4570717, at *2 (N.D. Tex. Sept. 7, 2017), *rep. & rec. adopted*, No. 3:16-cv-2943-L, 2017 WL 4548474 (N.D. Tex. Oct. 12, 2017).

When a party has not yet appeared in an action, a pleading filed after the

11

original complaint must be served according to Federal Rule of Civil Procedure 4.

*See Fluor Eng'rs & Constr., Inc. v. S. Pac. Transp. Co.*, 753 F.2d 444, 449 n.7 (5th Cir.

1985) (distinguishing between service of a cross action under Rule 5(b) and service of

a cross action under Rule 4). Federal Rule of Civil Procedure 4(e) provides that

> [u]nless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by:
>> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>> (2) doing any of the following:
>>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e). Service under Texas state law – permitted in federal courts sitting

in Texas under Rule 4(e)(1) above – is governed by Texas Rule of Civil Procedure 106.

Texas Rule 106 allows service of process by:

> (1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto, or
> (2) mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto.

TEX. R. CIV. P. 106(a). Such service must be made by "any person authorized by [Texas]

Rule 103," *id.*, including "(1) any sheriff or constable or other person authorized by law,

(2) any person authorized by law or by written order of the court who is not less than

eighteen years of age, or (3) any person certified under order of the Supreme Court."

TEX. R. CIV. P. 103. "The officer or authorized person executing the citation must complete a return of service." TEX. R. CIV. P. 107(a). And, "[w]hen the citation was served by registered or certified mail as authorized by Rule 106, the return by the officer or authorized person must also contain the return receipt with the addressee's signature." TEX. R. CIV. P. 107(c).

Here, according to PCIC's Proof of Service filed on the docket, a person named Rudy Hinojosa mailed a summons and PCIC's Complaint for Declaratory Relief via certified mail, return receipt requested, addressed to Phillip Jenkins, 12895 Josey Lane, Suite 124, Dallas, Texas, 75234-8300. *See* Dkt. No. 37 at 1-2 of 3. A person named Michael Brown – marked on the return receipt as an agent of Mr. Jenkins – signed for the delivery. *See id.* at 1-2 of 3.

On July 9, 2018, PCIC filed its Declaration in Support of Default Judgment (the "Declaration"). *See* Dkt. No. 72. PCIC's Declaration does not explain the identity of Rudy Hinojosa and – although the Court might infer that Hinojosa is a certified private process server based on the "SCH" number displayed on the Proof of Service, *see* Dkt. No. 37 at 1 of 3 – PCIC gives no explanation as to why Hinojosa is authorized under Rule 103 to serve Jenkins under Rule 106. Nor does PCIC describe the identity of Michael Brown, how Michael Brown is Jenkins's agent, and why Michael Brown's accepting personal service addressed to Mr. Jenkins constitutes proper service under Rule 106. And PCIC's brief in support of its Motion for Default sheds no additional light on these issues, stating only that "Jenkins was properly served with summons and PCIC's Complaint for Declaratory Judgment." Dkt. No. 60 at 16 of 17.

13

Because PCIC has not shown that service was proper on Jenkins under the Federal Rules, PCIC is not entitled to default judgment against Jenkins. *See Williams*, 2017 WL 4570717, at *2 (citing *MCA Ventures, LLC v. MJ Envtl. Inc.*, No. 15-9087-CM, 2015 WL 5937621, at *2 (D. Kan. Oct. 13, 2015) (denying motion for default judgment without prejudice because, "[t]o enter default judgment, the court requires more information under Federal Rule of Civil Procedure 55(b)(2)(D)")).

II.    The Court should deny the Navarros' MSJ and grant PCIC's MSJ.

The Navarros and PCIC present cross-motions for summary judgment on their duty to defend claims, disagreeing on only whether the "fall from heights" exclusion applies to the Navarros' allegations in the Underlying Suit. PCIC also argues that, because the exclusion applies, PCIC is entitled to summary judgment on its duty to indemnify claim.

The Navarros' MSJ should be denied as to PCIC's duty to defend and PCIC's MSJ should be granted as to PCIC's duty to defend and duty to indemnify because PCIC has met its burden in showing that the "fall from heights" exclusion applies to the Navarros' allegations in the Underlying Suit, and the Navarros have presented no evidence of any applicable exception to that exclusion.

 "In Texas, the duty to defend and duty to indemnify are distinct and separate duties creating distinct and separate causes of action." *Am. Alliance Ins. Co. v. Frito–Lay, Inc.*, 788 S.W.2d 152, 153 (Tex. App. – Dallas 1990, writ dism'd w.o.j.). The duty to defend is "broader than the duty to indemnify." *E & L Chipping Co. v. Hanover Ins.* Co., 962 S.W.2d 272, 274 (Tex. App. – Beaumont 1998, no pet.). "The duty to

14

defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy." *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002) (citation and internal quotation marks omitted). The duty to indemnify, on the other hand, requires an insurer "to pay all covered claims and judgments against an insured." *Solstice Oil & Gas I, L.L.C. v. Seneca Ins. Co.*, 655 F. App'x 221, 224 (5th Cir. 2016) (quoting *D.R. Horton – Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)).

Here, the PCIC policy provides for both the duty to defend and the duty to indemnify:

> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> 1. **Insuring Agreement**
>    a. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking "damages" to which this insurance applies. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

Dkt. No. 61 at 20.

First, as to whether PCIC owes Jenkins a duty to defend, the Navarros argue that PCIC owes Jenkins a duty to defend because the allegations of their Original Petition fall within the PCIC policy's coverage. PCIC argues that it does not owe Jenkins a duty to defend because the Navarros' allegations fall within the "fall from heights" exclusion to coverage.

15

Under Texas law, a court determines whether an insurer owes an insured a duty to defend by applying the eight-corners rule.

As one court within the Fifth Circuit has explained,

"[u]nder the eight-corners rule, the duty to defend is determined by the claims alleged in the petition and the coverage provided in the policy." *Pine Oak Builders, Inc.*, 279 S.W.3d at 654. "Resort to evidence outside the four corners of these two documents is generally prohibited." *Nautilus Ins. Co v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 454 (5th Cir. 2009). "The duty to defend does not depend upon the truth or falsity of the allegations: 'A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend....'" *Id.* (internal citations omitted).

"The insured bears the initial burden of showing that the claim ... is potentially within the insurance policy's scope of coverage." *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001). When the petition does not present facts within the scope of the policy's coverage, the insurer is not legally obligated to defend a suit on behalf of the insured. *Pine Oak Builders, Inc.*, 279 S.W.3d at 654. But, if the facts in the pleadings give rise to any claim covered under the policy, then the insurer has a duty to defend the insured with respect to all of the claims. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004). If coverage is proven by the insured then, to avoid liability, the insurer must prove that the loss falls within an exclusion. *Gilbert Texas Constr. L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). If the insurer proves an applicable exclusion, the burden shifts back to the insured that the claim is still covered because of an exception to the exclusion. *Id.* Although the allegations in the petition are interpreted liberally and in favor of the insured, the court must not "read facts into the pleadings," "look outside the pleadings," or "imagine factual scenarios which might trigger coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997). The court's inquiry must turn on the facts alleged and the origin of damages, rather than the legal theories asserted. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 271 F. Supp.2d at 931; *see also Am. Auto., Inc. v. Mayfield*, 287 F. Supp. 2d 661, 664 (N.D. Tex. 2003). Nonetheless, "all doubts regarding the duty to defend [are resolved] in favor of the duty." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

*Town Ctr. Mall v. Zurich Am. Ins. Co.*, 797 F. Supp. 2d 786, 791-92 (S.D. Tex. 2011).

"Texas law provides that insurance policies are construed according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010). The Fifth Circuit has explained that

> [w]here, as here, the disputed provision in the insurance policy is an exclusion, the insurer bears the burden of establishing that the exclusion applies. *Id.*; *see also* Tex. Ins. Code § 554.002 ("[T]he insurer ... has the burden of proof as to any avoidance or affirmative defense that the Texas Rules of Civil Procedure require to be affirmatively pleaded. Language of exclusion [sic] in the contract or an exception to coverage claimed by the insurer or health maintenance organization constitutes an avoidance or an affirmative defense.").

It is well settled that:

> [t]erms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage. Where an ambiguity involves an exclusionary provision of an insurance policy, [a court] must adopt the construction ... urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.

*Gilbert Texas Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010) (internal citations and quotation marks omitted). An ambiguity is present if a "policy is susceptible to two or more reasonable interpretations." *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 859 (5th Cir. 2006) (citations omitted). An ambiguity does not exist, however, "simply because the parties interpret a policy differently. If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Gilbert*, 327 S.W.3d at 133 (citations omitted). When an exclusion is clear and unambiguous, we interpret it according to its plain meaning, and give no deference to the insured's interpretation. *See Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins.*

*Co.*, 602 F.3d 677, 681 (5th Cir. 2010) (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)).

*Am. Home Assur. Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011).

Here, starting with the terms of the insurance policy, the PCIC policy provides:

> **2.    Exclusions**
> This insurance does not apply to:
> ...
> **ah.    Fall from Heights**
> "Bodily injury" sustained by any person at the location of the incident, whether working or not, arising out of, resulting from, caused by, contributed to by, or in any way related to, in whole or in part, from a fall from heights. For purposes of this exclusion, a fall from heights shall include, but not be limited to, a fall from scaffolding, hoists, stays, ladders, slings, hangers, blocks, or any temporary or moveable platform where there is a height differential to the ground.

Dkt. No. 43 at 14 & 22; Dkt. No. 61 at 21 & 29.

The undersigned concludes that the exclusion is unambiguous and gives its terms their plain meaning.

The parties appear to agree that the term "fall from heights" has a plain and generally accepted meaning. PCIC explains in its response and MSJ that, in the context of bodily injury, "fall from heights" "invariably refers to an uncontrolled fall from a place of higher elevation to lower elevation which results in injury." Dkt. No. 47 at 11 of 18; Dkt. No. 60 at 11 of 17.

The Navarros do not outright disagree: they contend that "fall from heights" is "a fall from a location where there is any height differential from the ground." Dkt. No. 42 at 8; Dkt. No. 66 at 5 of 8. But the Navarros insist that the generally accepted meaning of "fall from heights" is limited here by the second sentence of the exclusion.

The Navarros maintain that "[t]he exclusion, taken as a whole, does not prevent coverage from all 'fall from heights'" because "[i]t is clear that the second sentence limits the meaning of 'fall from heights' to falls from construction equipment, or temporary platforms used in the construction process." Dkt. No. 42 at 8. According to the Navarros, "fall from heights," as defined by the exclusion's second sentence, "only applies to falls from an apparatus or object used in the construction process that has a height differential to the ground." Dkt. No. 58 at 3. The Navarros further argue that interpreting the policy otherwise would render the second sentence meaningless.

But that is not how well-settled rules of construction apply to this policy language. Texas courts have observed a "well settled rule that the words 'include,' 'including' and 'shall include' are generally employed as terms of enlargement rather than limitation or restriction." *Republic Ins. Co. v. Silverton Elevators, Inc.*, 493 S.W.2d 748, 752 (Tex. 1973) (collecting cases). These words have been interpreted as used "'by way of explanation' in a manner which broadened the ordinary meaning of the term" that they follow. *See id.* at 752 (citing *Dixie Fire Ins. Co. v. McAdams*, 235 S.W.2d 207 (Tex. Civ. App. – Galveston 1950, writ dism'd)). And "they are never regarded as being identical with or equivalent to 'mean and include,' nor with such less elastic words and terms as 'meant,' 'meaning,' or 'by which is meant.'" *Houston Bank & Tr. Co. v. Lansdowne*, 201 S.W.2d 834, 838 (Tex. Civ. App. 1947, writ ref'd n.r.e) (quoting *Peerless Carbon Black Company v. Sheppard*, 113 S.W.2d 996, 997 (Tex. Civ. App. – Austin 1938, writ ref'd)).

Reading the policy as a whole and giving effect to each provision, the "fall from

19

heights" exclusion applies to more than just falls from temporary platforms used in the construction process. By its terms, the exclusion applies to bodily injury "in any way related to, in whole or in part, a fall from heights." Dkt. No. 43 at 22. And the sentence that follows makes clear that "fall from heights" cannot be reasonably read, under the applicable rules of construction, to be limited to falls from only certain types of temporary, movable platforms used in the construction process. *See id.*

There is no indication that the second sentence limits the plain meaning of "fall from heights." The second sentence does not purport to change the generally accepted definition of "fall from heights" or specify from where or how a person must fall to come within the exclusion. *See Republic Ins. Co.*, 493 S.W.2d at 752. That is, while the "fall from heights" exclusion affirmatively applies to falls from the surfaces described in the second sentence, the exclusion's language instructs the parties to give "fall from heights" a more inclusive meaning. Although the Navarros assert that such a meaning is too broad, *see* Dkt. No. 42 at 8; Dkt. No 66 at 6, that argument does not show that the phrase is ambiguous, *see Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 926 (N.D. Tex. 2009), and, when applying the proper rules of construction, does not offer a competing, reasonable interpretation as opposed to an instance of the Navarros' simply interpreting the policy differently.

Accordingly, the "fall from heights" exclusion as written can be given a clear and definite legal meaning and is unambiguous. *See Gilbert*, 327 S.W.3d at 133. The Court should interpret the exclusion according to its plain meaning and decline to limit the meaning of "fall from heights" – as the Navarros propose – to falls from only temporary

or moveable construction platforms like those listed in the second sentence. *See Travelers Lloyds Ins. Co.*, 602 F.3d at 681.

Turning to the allegations in the Underlying Suit, the Navarros allege that "Mr. Navarro fell thru the attic floor and landed on the solid concrete floor of the garage space below, a distance of approximately 18 feet" and that "Mr. Navarro's suffered severe life threatening injuries resulting farom the fall." Dkt. No. 43 at 71; Dkt. No. 61 at 6.

The Navarros' allegations fall within the plain meaning of the "fall from heights" exclusion as a matter of law. Although Mr. Navarro may not have been standing at a "height" when his feet were planted on the attic floor supports, Mr. Navarro fell from a height – from eighteen feet above the garage floor – when the floor supports gave way. And the Navarros allege that this fall caused Mr. Navarro's bodily injury.

Once PCIC met its burden of showing that the "fall from heights" exclusion applies to the Navarros' allegations in the Underlying Suit, it was the Navarros' burden – both to be entitled to summary judgment and to defend against it – to show that an exception to the exclusion resulted in coverage. *See Gilbert Texas Constr. L.P.*, 327 S.W.3d at 124. The Navarros have presented no evidence of an exception here.

Because the Navarros have not proven beyond peradventure that their pleading in the Underlying Suit alleges facts that potentially fall within the PCIC policy's coverage, the Navarros' MSJ should be denied. Because PCIC has proven beyond peradventure that the "fall from heights" exclusion applies to the facts alleged in the Underlying Suit – and the Navarros have not presented evidence of an applicable

21

exception to that exclusion – PCIC's MSJ should be granted as to PCIC's duty to defend.

Second, as to PCIC's duty to indemnify Jenkins, PCIC argues that it has no duty to indemnify Jenkins and that it may be granted summary judgment on that issue "[b]ecause the Navarros' claims are completely excluded from coverage" and because, "[f]or the same reason PCIC has no duty to defend Jenkins, it also has no duty to indemnify." Dkt. No. 59 at 2. The Navarros do not address PCIC's argument regarding its duty to indemnify in the Navarros' response to PCIC's MSJ. *See* Dkt. No. 66.

"In contrast [to the duty to defend], the duty to indemnify is based, not upon the pleadings, but upon the actual facts which underlie and result in the liability." *Am. All. Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 154 (Tex. App. – Dallas 1990, writ dism'd) (citing *Heyden Newport Chemical Corp. v. Southern General Ins. Co.*, 387 S.W.2d 22, 24-25 (Tex. 1965)). As the Fifth Circuit has explained,

> "Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless 'the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004) (quoting *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)). Thus, we may only reach the merits of the insurers' duty to indemnify if "[n]o facts can be developed" in the liability case between [the claimant] and [the policyholder] that could create a possibility of insurance coverage. *See Griffin*, 955 S.W.2d at 84. "Accordingly, the duty to indemnify typically cannot be adjudicated until there has been a judgment in the underlying suit because facts proven at trial may differ slightly from the allegations." *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 431 (5th Cir. 2016) (citing *Griffin*, 955 S.W.2d at 83-84).

*Solstice Oil & Gas I, L.L.C.*, 655 F. App'x at 224; *see also LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 674 (5th Cir. 2015) (quoting *Griffin*, 955 S.W.2d at

84); *American Western Home Ins. Co. v. Israel*, 747 F. Supp. 2d 785, 794 (S.D. Tex. 2010) (In Texas, "the duty to indemnify is decided only after the underlying liability case is concluded. However, where an exclusion that precludes the duty to defend would also preclude indemnity, courts are permitted to decide the duty to indemnify in advance of the underlying liability lawsuit's end." (quoting *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 458 (5th Cir. 2009) and citing *Griffin*, 955 S.W.2d at 84)).

Here, the "fall from heights" exclusion's applicability which negates PCIC's duty to defend also negates any possibility that PCIC will ever have a duty to indemnify Jenkins. *See LCS Corr. Servs., Inc.*, 800 F.3d at 674 (holding summary judgment as to the duty to indemnify was proper where trial in the underlying lawsuit would reveal no additional facts that would establish coverage). Per the PCIC policy, PCIC is obligated to "pay those sums that the insured becomes legally obligated to pay as 'damages' because of 'bodily injury' or 'property damage' to which this insurance applies," Dkt. No. 61 at 20, but "this insurance does not apply" to bodily injury within the "fall from heights" exclusion, *id.* at 21.

As discussed above, the "fall from heights" exclusion, as a matter of law, applies to Mr. Navarro's injuries caused by falling from the attic floor to the garage floor below. That Mr. Navarro's claimed bodily injury results from falling from the attic floor to the garage floor is not in dispute, and no facts can be developed in the Underlying Suit that can transform Mr. Navarro's injury into one unrelated to a "fall from heights" under the policy. Moreover, the undersigned sees no possible exception in the PCIC policy to

23

the "fall from heights" exclusion – and the Navarros point to none – that the Navarros might prove at trial in the Underlying Suit. This, then, is the rare situation in which the allegations in the Underlying Suit conclusively foreclose that facts adduced at trial could create a duty to indemnify. *Compare Hartford*, 827 F.3d at 431.

Because the "fall from heights" exclusion applies to exclude coverage for both defense and indemnity, PCIC's MSJ should be granted as to its duty to indemnify.

## Recommendation

For the reasons discussed above, the Court should deny the Navarros' Motion for Partial Summary Judgment Against Defendant Preferred Contractors Insurance Company, RRG [Dkt. No. 41], should grant PCIC's Amended Motion for Summary Judgment [Dkt. No. 59], and should deny PCIC's Motion for Default Judgment [Dkt. No. 59]. The Court should enter judgment for PCIC against the Navarros declaring that PCIC is not legally obligated to defend Jenkins against or indemnify Jenkins for the Navarros' claims in the Underlying Suit.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

24

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 27, 2018

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

25